UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER SULLIVAN, et al.

    Appellants,

                                                            Civil Action No. 21-cv-12349

vs.                                                   HON. MARK A. GOLDSMITH

TIMOTHY J. MILLER,

    Appellee.
_____/

**OPINION & ORDER
DENYING APPELLEE MILLER'S MOTION TO DISQUALIFY APPELLANTS'
COUNSEL (Dkt. 9)**

    This matter involves an appeal of adversary proceedings brought by Appellee Timothy Miller, the trustee of the bankruptcy estate of Debtors Jason and Leah Wylie, against Appellants Christopher and Kathleen Sullivan.[1] Before the Court is Miller's motion to disqualify the Sullivans' appellate counsel, Morris & Morris Attorneys, P.L.L.C. Mot. (Dkt. 9). For the reasons that follow, the Court denies Miller's motion.[2]

### I. BACKGROUND

    Jason and his wife, Leah, transferred their interest in certain Arkansas real estate to Jason's parents, Christopher and Kathleen. Mot. at 7–8; Resp. at 4. Approximately two years later, the Wylies filed a joint voluntary Chapter 7 bankruptcy petition. Morris & Morris represented the Wylies in the underlying bankruptcy matter, see Mot. at 7, and now represents

---

[1] Because there are multiple individuals with the last name of "Sullivan" and "Wylie" in this case, the Court refers to each of these individuals by first name.

[2] The Sullivans filed a response (Dkt. 11) and Miller filed a reply (Dkt. 12). Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

the Wylies in the appeal of that matter, see Wylie et al, No. 21-11354.

After the bankruptcy petition was filed, Miller filed adversary proceedings against the Sullivans, alleging that the transfers from the Wylies to the Sullivans were fraudulent and therefore avoidable. Mot. at 8; Resp. at 4. The Sullivans were represented by the Law Office of David J. Hutchinson in their respective adversary proceedings. Mot. at 8. The bankruptcy court granted summary judgment in favor of Miller in each proceeding. Id. In the Sullivans' appeal to this Court from those decisions, they are represented by Morris & Morris. Id.; Resp. at 4–5.

## II. DISCUSSION

Because the Court sits in Michigan, the Court applies the Michigan Rules of Professional Conduct to resolve the ethical disputes in this bankruptcy matter. See Pereira v. Allboro Bldg. Maint., Inc. (In re Allboro Waterproofing Corp.), 224 B.R. 286, 291 n.3 (Bankr. E.D.N.Y. 1998) ("Federal bankruptcy courts sitting in New York generally apply the [New York] Code of Professional Responsibility to ethical disputes, including disqualification motions."). "[A] heavy burden is placed on the movant to show that disqualification [of counsel] is necessary" and, even if the Michigan Rules of Professional Conduct have been violated, this does not "automatically result in disqualification of counsel." Id. at 294 (punctuation modified). Trial courts are granted broad discretion to determine whether disqualification is required in a particular case. Watkins v. Trans Union, LLC, 869 F.3d 514, 518 (7th Cir. 2017).

Miller argues that Morris & Morris is prohibited from representing the Sullivans under Michigan Rule of Professional Conduct 1.7(a), which states:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>    (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>    (2) each client consents after consultation.

2

Mich. R. Prof'l Cond. 1.7(a).³ According to Miller, Morris & Morris's representation of the Sullivans is "directly adverse" to the Wylies. Mot. at 10. Miller further argues that the consent requirement of the exception to Rule 1.7(a) is not satisfied because "[t]he decision of whether to consent under Rule 1.7(a)(2) is controlled by the Chapter 7 Trustee, on behalf of the Debtors' bankruptcy estate, and the Trustee has not consented, and will not consent." Id. at 12.⁴ The Sullivans disagree with both arguments. Resp. at 5. The Court addresses each argument in turn.

**A. Conflict of Interest**

Miller contends that the Wylies have two duties implicated in this ethics dispute: (i) a statutory duty to cooperate with Miller and (ii) a fiduciary duty to the bankruptcy estate and its creditors. From these predicates, Miller reasons that the Wylies must necessarily support Miller's attack on the transfers, meaning that they have an interest that is directly adverse to the Sullivans' interest. According to Miller, this places their counsel in the position of representing clients with interests that are directly adverse. The Court disagrees with Miller's analysis and conclusion.

It is true that every debtor has a statutory duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C. § 521(a)(3). And that duty requires a debtor to comply with reasonable requests to assist the trustee in the performance of the trustee's duties. In re Fears, No. 19-54711-jda, 2021 WL 726066, at *2 (Bankr. E.D. Mich. Feb. 23, 2021). In the context of an adversary proceeding to recover fraudulently transferred assets, the duty to cooperate means that a debtor must provide a trustee

---

³ If any Morris & Morris attorney is conflicted out of representing the Sullivans, the entire firm is as well. Michigan Rule of Professional Conduct 1.10 imputes disqualification of one lawyer in a firm to others in the firm: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9(a), or 2.2." Mich. R. Prof'l Cond. 1.10(a).

⁴ Miller does not challenge whether Rule 1.7(a)(1) is satisfied.

with requested information and documents. See Pereira, 224 B.R. at 292 ("The Debtor is . . . under a duty to disclose information that would assist the Trustee in his efforts to recover assets of the estate in the preference and fraudulent conveyance actions.").

But a debtor's duty to cooperate with the trustee by providing information and documents has not been threatened here. Miller makes no allegation that the Wylies have been derelict in any way regarding the provision of information or documents in the bankruptcy court. And given that the present context is an appeal—involving the purely legal question of whether the bankruptcy court properly held that an implied trust could not be found under Arkansas law to justify the challenged transfers, see Appellants Br. at 1 (Dkt. 10)—there is no apparent way that the duty to furnish documents or information might be compromised at the appellate level. Without a breach or threatened breach of that duty—and without even a pending request for cooperation, much less an unrequited one—there has been no showing of direct adversity regarding the duty to cooperate.

The trustee's broader claim—that the Wylies' duty to the estate makes them adverse to the Sullivans—is likewise without merit. The predicate to this claim is that a Chapter 7 debtor has a duty to the estate, a matter about which courts are divided. The argument against such a duty is on stronger footing.

In Peterson v. Sanches (In re Mack Industries, Ltd), 606 B.R. 313, 321 (Bankr. N.D. Ill. 2019), the court concluded that Chapter 7 debtors owe no fiduciary duty to the estate or its creditors, noting the many ways in which debtors may legitimately oppose the interests of creditors. Such opposition plays out in various contexts, such as where the debtor and trustee disagree about the debtor's claim to exemptions, the trustee's demand for turnover of assets, fraudulent transfer claims, and whether a debtor is entitled to a discharge. Id. at 321–322. All of this led the Peterson court to conclude that "[n]either chapter 7 debtors nor their counsel . . . owe

4

a fiduciary duty to the bankruptcy estate," and that a "chapter 7 debtor may assert his own interest on any issue involving a conflict with the trustee without violating any statutory or other duty to the estate." Id. at 321.

Peterson acknowledged that there are cases recognizing such a duty owed by debtors, but the court found the cases distinguishable. Id. at 319 (citing Agresti v. Rosenkranz (In re United Utensils Corp.), 141 B.R. 306, 309 (Bankr. W.D. Pa. 1992); Paloian v. Greenfield, et al. (In re Restaurant Devel. Group, Inc.), 402 B.R. 282, 287 (Bankr. N.D. Ill. 2009)). Peterson noted that these cases arose in the context of a Chapter 11 debtor-in-possession, who owes a duty to the estate by virtue of continuing to operate the debtor business, see id. at 319–321—a circumstance not present in the Chapter 7 context. Peterson also noted a Chapter 7 case from this district holding that the debtor had a duty to the estate, Kohut v. Lenaway (In re Lennys Copy Ctr. & More LLC), 515 B.R. 562, 564–565 (Bankr. E.D. Mich. 2014). Peterson, 606 B.R. at 321 n.5. But the Peterson court pointed out that Kohut failed to explain its conclusion and mistakenly relied on Paloian, a case in the debtor-in-possession context. Id.

For these reasons, Miller has failed to show that Morris & Morris's representation of the Sullivans in this appeal is directly adverse to the Wylies. Even if Miller had made such a showing, he has not proven that the appropriate parties have not consented to the simultaneous representation, as discussed below.[5]

### B. Consent

A conflict of interest is waived if each client consents to the representation after

---

[5] Miller also suggests that a debtor's lawyer owes a fiduciary duty to the bankruptcy estate and its creditors and, therefore, may not assist the Wylies in taking a position in this matter that is antithetical to the trustee. Ultimately, a lawyer's duties in a Chapter 7 bankruptcy proceeding are to his or her client. See Houghton v. Morey (In re Morey), 416 B.R. 364, 367 (Bankr. D. Mass. 2009) ("[T]he only duty which counsel for the debtor assumes is to his or her client."). Thus, Morris & Morris may assist the Wylies in opposing the trustee without violating any duty. See Peterson, 606 B.R. at 321.

consultation about the conflict. Mich. R. Prof'l Cond. 1.7(a)(2). Miller contends that in bankruptcy, "[t]he decision of whether to consent under Rule 1.7(a)(2) is controlled by the Chapter 7 Trustee, on behalf of the Debtors' bankruptcy estate, and the Trustee has not consented, and will not consent." Mot. at 12.

In support, Miller cites Parker v. Frazier (In re Freedom Solar Ctr., Inc.), 776 F.2d 14, 17 (1st Cir. 1985). There, an attorney attempted to simultaneously represent a corporate debtor, the debtor's sole shareholder, and a new corporation organized by the shareholder. Parker, 776 F.2d at 17. The court held that "[o]nce a trustee has been appointed in bankruptcy, all functions traditionally handled by the debtor's management are subsumed by the trustee." Id. (citing Commodity Futures Trading Comm'n v. Weintraub, 105 S. Ct. 1986, 1993 (1985)). Therefore, "only the trustee could consent for the debtor to the multiple representation," and since no such consent had been given in that case, the consent requirement of the exception to Rule 1.7(a)'s general rule did not apply. Id.

Because the instant case does not involve a corporate debtor, Parker is distinguishable. In the context of a corporate client, the corporation—not its officers or directors—is the lawyer's client. See Mich. R. Prof'l Cond. 1.13(a). But because a corporation can speak or act only through its agents, the corporation's management acts on the corporation's behalf. See Weintraub, 105 S. Ct. at 1991. For solvent corporations, "management" means officers and directors. See id. However, in bankruptcy, a corporate debtor's management becomes exercised by a trustee. See id. at 1992. Thus, in the case of a corporate debtor, the trustee holds the power to waive conflicts of interest on the corporation's behalf. See id. at 1993. "An individual, in contrast, can act for himself; there is no 'management' that controls a solvent individual's [power to waive a conflict of interest]." Id. at 1995. As a result, bankruptcy does not transfer an individual's power to waive conflicts of interest to the trustee.

6

There is contrary authority. As Miller points out, in McClarty v. Wise (In re Wise), 2018 Bankr. LEXIS 2617 (Bankr. E.D. Mich. 2018), the court held that an individual client could not consent to the multiple representation. But the reasoning in McClarty is unpersuasive. In that case, the bankruptcy court determined that the attorney's representation of a defendant in an adversary proceeding was directly adverse to another client—the debtor in the main bankruptcy case. On the issue of consent, the bankruptcy court stated, in a perfunctory manner, that "the Chapter 7 Trustee controls the Debtor's consent in this context, and has not consented to the dual representation." Id. The bankruptcy court did not directly cite any support for this conclusion, though it stated later in the opinion that it "ma[de] the foregoing findings and conclusions for the same reasons that were stated by the courts in . . . Kohut v. Lenaway (In re Lennys Copy Center and More LLC), 515 B.R. 562 (Bankr. E.D. Mich. 2014) and Houghton v. Morey (In re Morey), 416 B.R. 364 (Bankr. D. Mass. 2009)." Id.

However, the decision to consent belonged to the trustee in Kohut because the debtor was an LLC and, therefore, while it was in bankruptcy, its management was exercised by the trustee. See Kohut, 515 B.R. at 565. And Houghton did not reach the issue of consent. See Houghton, 416 B.R. at 369 (holding that the dual representation of defendants in an adversary proceeding and the debtor in the main bankruptcy created a conflict that could not be overcome by consent).[6] Because McClarty neither provides any analysis nor cites to any on-point decision to support its conclusion that a trustee controls an individual debtor's consent, the Court declines to follow it.

Another reason strongly counsels against following McClarty here. Under McClarty, there would be no logical stopping point to a trustee's control of the attorney-client relationship

---

[6] In addition to McClarty, Miller points to Gold v. Shelton (In re Thompson), No. 20-48647, 2021 WL 726070 (Bankr. E.D. Mich. Feb. 23, 2021), which also held that a trustee controls an individual debtor's consent. Gold relied on McClarty and Kohut to reach this holding. See Gold, 2021 WL 726070, at *1. As a result, Gold's reasoning is as unpersuasive as McClarty's.

between an individual debtor and his or her attorney. If the trustee controls the waiver of conflicts, it is not clear why the trustee could not also control the right to waive entirely the attorney-client privilege and attorney work product protection. Needless to say, such expansive power would bestow immense leverage on the trustee over an individual debtor and frustrate an individual debtor's ability to obtain necessary independent professional advice. Miller references no part of the Bankruptcy Code that contemplates giving the trustee such overarching power.

Because Miller is incorrect that he—rather than the Wylies—holds the power to consent, the question becomes whether the Sullivans and the Wylies have consented to Morris & Morris's dual representation. It appears that they have done so. See Resp. at 16. Accordingly, Miller has not shown that the consent requirement is unsatisfied. And because Miller does not challenge any other aspect of Rule 1.7(a)'s exception, Miller has failed to show that the exception is inapplicable.

### III. CONCLUSION

For the foregoing reasons, Miller's motion to disqualify counsel (Dkt. 9) is denied.

SO ORDERED.

Dated: January 4, 2022       s/Mark A. Goldsmith
    Detroit, Michigan       MARK A. GOLDSMITH
                                            United States District Judge