UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER SULLIVAN, et al.

    Appellants,

vs.

    Civil Action No. 21-cv-12349

    HON. MARK A. GOLDSMITH

TIMOTHY J. MILLER,

    Appellee.

_____/

**OPINION & ORDER**
**(1) REVERSING THE BANKRUPTCY COURT'S DECISION AND REMANDING FOR FURTHER PROCEEDINGS AND (2) DENYING AS MOOT APPELLANTS' RENEWED MOTION TO STAY SALE OF SUBJECT PROPERTY PENDING APPEAL (Dkt. 20)**

Before the Court are consolidated appeals of two adversary proceedings brought by Appellee Timothy Miller, the trustee of the bankruptcy estate of Debtors Jason and Leah Wylie, a married couple. One adversary proceeding was brought against Jason's stepfather, Appellant Christopher Sullivan, and the other was brought against Jason's mother, Appellant Kathleen Sullivan.[1] In both proceedings, the Trustee sought to avoid allegedly fraudulent transfers of real estate located in Arkansas from the Wylies to the Sullivans. The bankruptcy court granted summary judgment to the Trustee in both proceedings. See Miller v. Sullivan (In re Wylie), 633 B.R. 542 (Bankr. E.D. Mich. 2021). For the following reasons, the Court reverses the bankruptcy court's decision and remands the matter for further proceedings.[2] Because this

---

[1] Because there are multiple individuals with the last name of "Sullivan" and "Wylie" in this case, the Court refers to each of these individuals by first name.

[2] The Sullivans' request for oral argument is denied because oral argument will not aid the Court's decisional process. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The matter will

opinion resolves the appeal, the Sullivans' renewed motion to stay the sale of the subject property pending the Court's resolution of this appeal (Dkt. 20) is denied as moot.

## I. BACKGROUND

In the early 1990s, Kathleen and Christopher purchased real property in Arkansas (the "Arkansas Property"). In re Wylie, 633 B.R. at 547. Following their divorce in 2009, through a series of quiet claim deeds, Kathleen became the sole owner of a portion of the Arkansas Property (the "Kathleen Property"), and Christopher became the sole owner of the remainder of the Arkansas Property (the "Christopher Property"). Id. Kathleen has since moved out of Arkansas. Mot. to Stay Sale at 3. Meanwhile, Christopher, a 72-year-old farmer, lives on the Christopher Property and "depends on the land for food and money." Id. at 4.

On March 24, 2014, Kathleen transferred a one-half interest in the Kathleen Property to Jason for stated consideration of $0. In re Wylie, 633 B.R. at 548. Kathleen's 2014 deed, entitled "Warranty Deed," conveyed her property to herself and Jason "as joint tenants with full rights of survivorship, and not as tenants in common." Id. Christopher's 2017 deed, entitled "Warranty Deed," conveyed his property to himself and Jason "as joint tenants with rights of survivorship, and not as tenants in common." Id. The Sullivans submitted affidavits stating that Jason "paid nothing" for the Kathleen Property or the Christopher Property. Bankr. Rec. at PageID.64 (Dkt. 4).[3] Jason "never had anything to do with [the properties]," meaning that he

---

be decided based on the parties' briefing, which includes the Sullivans' brief (Dkt. 10), the Trustee's brief (Dkt. 16), and the Sullivans' reply (Dkt. 18).

[3] As explained further below, the Sullivans also assert that in 2018, Jason deeded his interests back to the Sullivans for no consideration. Bankr. Rec. at PageID.64. The bankruptcy court, citing to the Trustee's brief, adopted the view that the 2014 and 2017 transfers were made for "consideration of $0.00," and that Jason's interests were subsequently deeded back to the Sullivans for "no consideration." In re Wylie, 633 B.R. at 548. The Court notes that the instruments reflect that the 2014 and 2017 transfers were made "for and in consideration of the

"never had any control over the lands covering the deeds in question, nor did he receive any of the rents or profits therefrom." Id. at PageID.64, 248. Rather, the 2014 and 2017 transfers were made "only for estate planning purposes." Id. at PageID.248–249.

The Sullivans changed their minds about the prudence of these transfers after Jason underwent brain surgery and started exhibiting mental health issues. Id. at PageID.64. At the Sullivans' request, in August 2018, the Wylies transferred their interest in the Kathleen Property back to Kathleen and their interest in the Christopher Property back to Christopher. In re Wylie, 633 B.R. at 548.[4] It is undisputed that the 2018 transfers occurred less than two years before the Wylies filed their bankruptcy petition,[5] that the Wylies were insolvent at the time of the transfers, and that the Wylies received no consideration for these transfers. In re Wylie, 633 B.R. at 548, 548 n.9.

The Trustee sought to avoid the 2018 transfers pursuant to 11 U.S.C. § 548(a)(1)(B), which endows a bankruptcy trustee with the authority to "avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer . . . and . . . was insolvent on the date that such

---

sum of Ten Dollars," and in 2018, Jason's interests were transferred back "for and in consideration of the sum of Ten Dollars." Bankr. Rec. at PageID.65, 67.

[4] Although Leah was not named in the deeds transferring the Sullivans' interests to Jason, she joined in the deeds that conveyed the interests back to the Sullivans, presumably to cut off any dower rights she might be deemed to have acquired.

[5] The Wylies filed their bankruptcy petition on August 27, 2020. The transfers at issue are deemed to have been made when they were recorded—on October 12, 2018. See 11 U.S.C. § 548(d)(1). Thus, the 2018 transfers occurred less than two years before the Wylies filed their bankruptcy petition.

transfer was made." 11 U.S.C. § 548(a)(1)(B).[6] Because the parties did not dispute that the transfers of the Wylies' interest in the properties were made within two years of the filing of the bankruptcy petition, the only issue before the bankruptcy court was whether the Wylies "'received less than a reasonably equivalent value in exchange for such transfer.'" In re Wylie, 633 B.R. at 549 (quoting 11 U.S.C. § 548(a)(1)(B)(i)).

The parties filed cross-motions for summary judgment.[7] The Sullivans asserted that the Wylies "owned only a bare legal title" in the properties and "never had any equitable ownership interest" in them. Bankr. Rec. at PageID.59–60. "Because bare legal title has no tangible, economic value, a debtor's transfer of bare legal title does not constitute a fraudulent transfer and cannot be avoided under § 548." In re Beard, 595 B.R. at 288 (punctuation modified). The Sullivans asserted, as they do again on appeal, that the Wylies held only legal title because Kathleen's and Christopher's sole purpose in transferring a one-half interest in their respective properties to Jason was "estate planning." Bankr. Rec. at PageID.63. The Sullivans argued that they were the beneficiaries of "resulting trusts" because they intended to retain control of their properties even though the warranty deeds made Jason a joint tenant with a right of survivorship. Id. at PageID.60 (citing First National Bank v. Rush, 785 S.W.2d 474, 478 (Ark. App. 1990)).

"There are different types of resulting trusts." Edwards v. Edwards, 843 S.W.2d 846, 849 (Ark. 1992). The Sullivans' motion for summary judgment did not specify the label of the

---

[6] The Trustee also sought to avoid the 2018 transfers pursuant to § 548(a)(1)(A). Because the bankruptcy court determined that the transfers were avoidable pursuant to § 548(a)(1)(B), it did not determine whether the transfers were also avoidable pursuant to § 548(a)(1)(A). In re Wylie, 633 B.R. at 552.

[7] The parties correctly agreed that the law of Arkansas, where the real property at issue is located, governs the question of the nature and extent of interests in the property. See United States Trustee v. Beard (In re Beard), 595 B.R. 274, 288 (Bankr. E.D. Ark. 2018) (applying, in § 548 analysis, Arkansas law to determine property rights) (citing N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re N.S. Garrott & Sons), 772 F.2d 462, 466 (8th Cir. 1985)).

resulting trust for which they were advocating. However, the motion cites to cases like First National Bank, 785 S.W.2d 474 that involve purchase-money resulting trusts, which arise "in favor of the person furnishing the purchase money" where "property is purchased in the name of one person with money furnished by another," Bankr. Rec. at PageID.60 (citing First National Bank, 785 S.W.2d at 478). As discussed further below, this imprecise drafting led the bankruptcy court to confine its analysis to the question of whether the Sullivans had proven the existence of purchase-money resulting trusts.

The Trustee argued that the Sullivans could not prove the existence of such trusts because they "did not furnish the funds to purchase the Propert[ies] in the name of Debtor Jason Robert Wylie. In fact, the Properties were transferred to him almost 26 years after their purchase by Kathleen and Christopher Sullivan." Bankr. Rec. at PageID.82. Additionally, the Trustee argued that the Sullivans had not argued for the imposition of constructive trusts, which are imposed "in favor of persons entitled to a beneficial interest against one who secures legal title either by an intentional false oral promise to hold title for a specified purpose, and having thus obtained title, claims the property as his own, or who violates a confidential or fiduciary duty or is guilty of any other unconscionable conduct which amounts to constructive fraud." Andres v. Andres, 613 S.W.2d 404, 407 (Ark. 1981). But "even if [they] . . . had, there would be no legal or factual support for such an imposition." Bankr. Rec. at PageID.83.

In reply, the Sullivans asserted that "[t]his is an appropriate case for the imposition of an implied resulting trust," once again without specifying the label of the applicable resulting trust. Id. at PageID.247. However, the Sullivans explained that "[t]he real question here is whether or not, prior to the second deed, Jason owned an interest in the Arkansas land that his creditors could have benefited from." Id. at PageID.244. Further, they articulated that "[t]he answer is

no" because, after Jason was added to the title for the Kathleen Property and the title for the Christopher Property, he "had absolutely no say in the use of the property, and received nothing from the use of the propert[ies]"; Jason "was to have no substantive interest in the propert[ies] whatsoever until [Kathleen's and Christopher's] death[s]." Id. at PageID.242–244.

The bankruptcy court, believing that the Sullivans had argued only for the imposition of purchase-money resulting trusts, determined that the Sullivans could not prove the existence of such trusts because, "[a]t the time when the [Sullivans] each conveyed an interest in their real estate to the [Jason], . . . the [Sullivans] had owned all of the real estate for 23 years or more." In re Wylie, 633 B.R. at 550. The bankruptcy court acknowledged the Sullivans' argument that they intended for their transfers to Jason to be for estate planning purposes only, but it concluded that, under Arkansas law, evidence of intent was "immaterial" to the purchase-money resulting trust analysis. Id. at 551.[8] Additionally, the bankruptcy court noted that the Sullivans did not expressly argue for the imposition of constructive trusts and, consequently, "forfeited any such argument." Id. at 552 n.13. In each adversary proceeding, the bankruptcy court denied the Sullivans' motion for summary judgment and granted summary judgment to the Trustee, avoiding the 2018 transfers pursuant to § 548(a)(1)(B) and allowing the Trustee to recover the transferred 2018 property pursuant to § 550(a)(1). Id. at 552–553. The Sullivans now appeal this decision.

The Trustee then brought a new adversary proceeding against the Sullivans—which is not on appeal before this Court—seeking to sell the Kathleen Property and the Christopher Property. See 1/26/22 Order at 1 (Dkt. 19). On February 25, 2022, a consent judgment enabling the

---

[8] Specifically, evidence of intent comes into play in the purchase-money resulting trust analysis "if all . . . of the requirements for a resulting trust" are met, "and then only to rebut a presumption that the transfer was intended as a gift to the transferor's child." In re Wylie, 633 B.R. at 551 (citing Wargo v. Wargo, 287 S.W.2d 879, 882 (Ark. 1956)).

6

Trustee to sell the properties was entered in the new adversary proceeding. See Consent Judgment (Dkt. 20-2). The Trustee is seeking approval of a sale agreement in the bankruptcy court. Mot. to Stay Sale at 7. The Sullivans ask the Court to stay the sale of the subject real estate property pending the Court's resolution of the appeal.

## II. ANALYSIS[9]

On appeal, the Sullivans argue that the bankruptcy court erred "by applying, to the facts of this case, a rule applicable to a party claiming the benefit of a purchase-money resulting trust," which applies where a "plaintiff paid for property conveyed to another," and "the purchase money [was] . . . paid at or prior to the acquisition of the real property." Sullivans Br. at 5. "The purchase-money resulting trust is not the only type of resulting trust recognized by the Arkansas courts," id. at 8 (citing Edwards, 843 S.W.2d at 849), and "Arkansas courts have never said that the rules applicable to a purchase-money resulting trust preclude an equitable remedy, by whatever name, in circumstances that call for some other implied-trust remedy," id. at 7–8. Here, there is no dispute that the Sullivans did not furnish purchase money for Jason's interest at the time of the original real estate transaction. Rather, "the trust results from the parties having intended that Jason be an owner in name only, without having the right to possess the property, or to demand that it be sold or partitioned." Id. at 5. Put differently, the Sullivans are beneficiaries of resulting trusts because they "convey[ed] [land to Jason], for no consideration," but "intend[ed] to retain an interest in the[ir] [respective] propert[ies] contrary to the express terms of the conveyance[s]." Id. at 6.

The Trustee argues that the Sullivans confined their arguments before the bankruptcy court to purchase-money resulting trusts, and, therefore, they have forfeited arguments about any

---

[9] The Court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo. In re Batie, 995 F.2d 85, 88 (6th Cir. 1993).

7

other types of trusts on appeal. Trustee Br. at 3, 10.

True, a court reviewing a bankruptcy court's decision generally cannot consider arguments raised for the first time on appeal. Stevenson v. J.C. Bradford and Co. (In re Cannon), 277 F.3d 838, 848 (6th Cir. 2002); see also Brown v. United States, 545 F. App'x 435, 438 (6th Cir. 2013) (explaining that "[d]eviations" from this general rule "are [only] permitted in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice"). But this is not a case where the appellants utterly failed to raise the argument before the bankruptcy court. Rather, this is a case where imprecise briefing led the bankruptcy court to read Appellants' position too narrowly.

While Arkansas courts have acknowledged that there are "different types of resulting trusts," Edwards, 843 S.W.2d at 859, Arkansas cases often use the term "resulting trust" to refer to purchase-money resulting trusts, see, e.g., Andres, 613 S.W.2d at 406 ("In general a resulting trust is said to arise when property is bought by one person with money or assets of another and title is taken in the name of the purchaser rather than of the person furnishing the consideration."). However, there is no Arkansas authority holding that a resulting trust refers only to purchase-money resulting trusts. In fact, the language from Edwards, noting that there are "different types of resulting trusts," and its endorsement of the broad definition of the term given in a scholarly treatise, suggest the contrary:

> [A] resulting trust arises in favor of the person who transferred the property or caused it to be transferred under circumstances raising an inference that he intended to transfer to the other a bare legal title and not to give him the beneficial interest.

8

Edwards, 843 S.W.2d at 849 (1992) (quoting Scott on Trusts, § 404.2 (1989)).[10] That would be consistent with the law in other jurisdictions, holding that "resulting trust" is not confined to purchase-money resulting trusts. See e.g., Stewart v. Shubert (In re Stewart), 368 B.R. 445, 451 (Bankr. E.D. Pa. 2007).

A careful review of the record reveals that the Sullivans argued before the bankruptcy court for the existence of resulting trusts as defined by § 404—not for purchase-money resulting trusts. Specifically, the Sullivans contended that resulting trusts arose because the deeds transferring the land to Jason did not reflect the true intention of the parties—i.e., for Jason to have only legal title to the properties until Kathleen's and Christopher's deaths. See, e.g., Bankr. Rec. at PageID.59 (asserting that the Sullivans' "sole reason" for transferring land to Jason was "estate planning"); id. at PageID.242–243 (arguing that, after the transfers to Jason, he "had absolutely no say in the use of the property, and received nothing from the use of the property" and "was to have no substantive interest in the propert[ies] whatsoever until [Kathleen's and Christopher's] death[s]"); id. at PageID.244 ("the most similar case to this one is In re Stewart, 368 B.R. 445 (B[an]kr. E.D. Pa. 2007)," where "a mother added her son to the title to property for estate planning reasons only, and later, the son filed bankruptcy" and the court found a resulting trust as defined by § 404).

The lawyer who represented the Sullivans before the bankruptcy court was careless in his

---

[10] This definition of a resulting trust is nearly identical to the one offered by the Restatement (Third) of Trusts, § 7 (2003):

> A resulting trust arises when a person (the "transferor") makes or causes to be made a disposition of property under circumstances (i) in which some or all of the transferor's beneficial interest is not effectively transferred to others (and yet not expressly retained by the transferor) and (ii) which raise an unrebutted presumption that the transferor does not intend the one who receives the property (the "transferee") to have the remaining beneficial interest.

use of words and citation to inapposite caselaw. He advocated for the existence of "resulting trusts" without expressly specifying that he did not mean purchase-money resulting trusts. And in support of his arguments, he cited Arkansas cases involving purchase-money resulting trusts. It is, therefore, understandable that the bankruptcy court believed the Sullivans to be raising solely an argument of purchase-money resulting trusts.

But for the reasons explained above, the Sullivans did raise the argument that resulting trusts arose in favor of the Sullivans because, contrary to the express terms of the 2014 and 2017 deeds, the circumstances reflect that the Sullivans intended for Jason to hold only legal title to the properties. The Sullivans, therefore, have not waived or forfeited the argument.

Because the bankruptcy court did not address the trust argument beyond the confines of a purchase-money resulting trust, the Court will reverse and remand so that the bankruptcy court may consider the broader argument.[11]

### III. CONCLUSION

For the foregoing reasons, the Court reverses the bankruptcy court's decision granting summary judgment in favor of the Trustee and against the Sullivans. The case is remanded for further proceedings. Additionally, the Sullivans' renewed motion to stay the sale of the subject property pending the Court's resolution of this appeal (Dkt. 20) is denied as moot.

SO ORDERED.

Dated: July 12, 2022　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[11] On remand, the bankruptcy court is free to explore any other pertinent issues bearing on summary judgment, such as the Trustee's argument based on intent to hinder creditors and the significance, if any, of the Wylies' agreement in February 2022 to a consent judgment for the sale of the properties. The latter point was not raised by the Trustee in the briefing on the appeal but was referenced in the Trustee's opposition to the renewed motion for a stay. It is a matter that is better considered by the bankruptcy court in the first instance.

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 12, 2022.

                                            s/William Barkholz, in the absence
                                            of Karri Sandusky
                                            WILLIAM BARKHOLZ
                                            Case Manager